**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOEL DE JESUS UREÑA DILONE, *on behalf of himself and all others similarly situated,*

*Plaintiff,*

-against-

REACTHINK CORP; MAKABAD CORP. d/b/a ADH GROUP; CRISTIHAN ZULUAGA; ANDRÉS ABADIA; MAURICIO PEDRAZA,

*Defendants.*

**RULE 23 CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## PRELIMINARY STATEMENT

1. Plaintiff Joel De Jesus Ureña Dilone ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this class and collective action complaint against Reacthink Corp ("Reacthink"), MAKABAD CORP. d/b/a ADH GROUP ("Makabad"), Cristihan Zuluaga ("Zuluaga"), Andrés Abadia ("Abadia"), and Mauricio Pedraza ("Pedraza")(collectively, "Defendants"), to recover unpaid overtime compensation, statutory penalties for wage notice and wage statement violations, uniform maintenance pay, liquidated damages, retaliation damages, prejudgment interest, attorneys' fees, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.*, 650 *et seq.*, and the regulations promulgated thereunder, 12 NYCRR Part 142.

2. Defendants operate a construction, HVAC, refrigeration, plumbing, and general home improvement business in and around Queens County, New York, under the trade name "ADH Group." Upon information and belief, Defendants use multiple corporate entities—including Reacthink Corp and Makabad Corp.—to obscure their true employment

relationships, evade wage and hour obligations, and prevent workers from identifying their actual employers.

3. Defendants employed Plaintiff and the putative class members as laborers, technicians, HVAC installers, plumbers, carpenters, painters, and in other construction-related positions. Defendants paid Plaintiff and other similarly situated workers a flat hourly rate for all hours worked, including hours in excess of forty (40) per workweek, without paying the overtime premium required by federal and state law.

4. Defendants maintained a systematic scheme to evade overtime obligations. Specifically, Defendants paid employees for their first forty (40) hours per week via direct deposit issued through Reacthink Corp. Any hours worked in excess of forty (40) per week were paid "off the books" at the straight-time rate by separate check issued through Makabad Corp. d/b/a ADH Group. Plaintiff, for example, received checks issued by "ADH GROUP" for these additional hours. Defendants failed to pay any overtime premium for hours worked over forty (40) in a workweek.

**JURISDICTION AND VENUE**

5. This Court has original federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because said claims arise from the same case or controversy as the federal claims.

7. Upon information and belief, there are over 100 members in the proposed class.

8. Defendants are subject to personal jurisdiction in New York as they do business in New York.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## PARTIES

10. Plaintiff Joel De Jesus Ureña Dilone is an adult individual residing in New York. During the relevant time period, Plaintiff was employed by Defendants as a laborer and HVAC technician specializing in refrigeration and mini-split installation from approximately August 14, 2024 through approximately August 11, 2025.

11. Defendant Reacthink Corp. ("Reacthink") is a domestic business corporation organized and existing under the laws of the State of New York, with DOS ID No. 5559514, incorporated on May 24, 2019. Reacthink's principal executive office is located at 71-11 Northern Blvd, Jackson Heights, NY 11372. Its Chief Executive Officer is Cristihan Zuluaga. Upon information and belief, Reacthink is one of the entities through which Defendants processed payroll and issued wage payments to workers, including Plaintiff, by direct deposit for the first forty (40) hours worked in a given workweek. Reacthink's name appeared on Plaintiff's paystubs and direct deposit records.

12. Defendant Makabad Corp. ("Makabad") is a domestic business corporation organized and existing under the laws of the State of New York, with DOS ID No. 4688117, incorporated on January 5, 2015. Makabad's principal executive office is located at 96-04 Northern Blvd, Corona, NY 11368. Its Chief Executive Officer is Andres Abadia. Upon information and belief, Makabad does business under the trade name "ADH Group" (the "ADH Group" trade name) and used that name in operating the business enterprise and paying workers.

13. Upon information and belief, Makabad—using the "ADH Group" trade name—was another entity through which Defendants managed the enterprise's payroll practices and financial affairs. Plaintiff, for example, received checks issued in the name "ADH GROUP" in connection with wages for hours worked in excess of forty (40) in a workweek. Upon information and belief, Makabad used these check payments to compensate for additional hours at the straight-time rate, without paying any overtime premium.

14. Upon information and belief, Reacthink, and Makabad (collectively, "Entity Defendants") operate as a single integrated enterprise and/or joint employers of Plaintiff and the putative class members. They share common ownership, management, office space, and interrelated operations. The Individual Defendants exercise operational control over all three entities and use them interchangeably in connection with the employment of Plaintiff and the putative class members.

15. Defendant Cristihan Zuluaga ("Zuluaga") is an individual who, upon information and belief, resides in New York. Zuluaga is the Chief Executive Officer of Reacthink Corp, as reflected in records filed with the New York State Department of State. Upon information and belief, Zuluaga is an owner, officer, and/or managing agent of the Entity Defendants who exercised operational and managerial control over Plaintiff and the putative class members, including the power to hire and fire employees, set work schedules, determine the rate and method of pay, and maintain employment records. Zuluaga is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, N.Y. Lab. Law § 2.

16. Defendant Andrés Abadia ("Abadia") is an individual who, upon information and belief, resides in New York. Abadia is the Chief Executive Officer of Makabad Corp., as reflected in records filed with the New York State Department of State. Upon information and

belief, Abadia is an owner, officer, and/or managing agent of the Entity Defendants who exercised operational and managerial control over Plaintiff and the putative class members, including the power to hire and fire employees, set work schedules, determine the rate and method of pay, and maintain employment records. Abadia is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, N.Y. Lab. Law § 2.

17. Defendant Mauricio Pedraza ("Pedraza") is an individual who, upon information and belief, resides in New York. Upon information and belief, Pedraza is an owner, officer, and/or managing agent of the Entity Defendants who exercised operational and managerial control over Plaintiff and the putative class members, including the power to hire and fire employees, set work schedules, determine the rate and method of pay, and maintain employment records. Pedraza is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, N.Y. Lab. Law § 2.

18. Each Defendant, individually and jointly with the other, is considered a large employer, having at least eleven (11) or more employees during the duration of Plaintiff's employment.

19. Upon information and belief, at all times relevant to the allegations in this Complaint, each Entity Defendant is and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

20. Defendants continuously employed Plaintiffs to work as non-exempt employees.

21. The work performed by Plaintiffs were essential to the business operated by Defendants.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment**

22. Plaintiff was employed by Defendants from approximately August 14, 2024 through approximately August 11, 2025, as a laborer and HVAC technician specializing in refrigeration and mini-split installation.

23. Plaintiff learned of the job through a friend and coworker. The company held itself out to workers and the public under the trade name "ADH Group."

24. At the beginning of his employment, Plaintiff was promised a wage of $35.00 per hour. However, during his first month, Defendants paid Plaintiff only $21.00 per hour. After Plaintiff complained, Defendants eventually raised his rate to $27.00 per hour, and only after further complaints did Defendants increase his rate to $30.00 per hour—still $5.00 less than the promised rate.

25. For each shift, Plaintiff was required to report to Defendants' warehouse located at 121-03 18th Avenue, College Point, NY 11356, to pick up the company van, load materials, and then drive the company van to the assigned work site to perform work. At the end of each day, Plaintiff was required to drive the van back to the warehouse to end his shift.

26. For the first 2 months, Plaintiff's regular schedule was Monday through Saturday. After that, Plaintiff was assigned to work seven (7) days a week, followed by a rotating cycle of six (6) days one week and seven (7) days the next. Plaintiff was nominally scheduled to work from 7:00 a.m. to 4:00 p.m., but in practice, Plaintiff regularly began work as early as 5:00 a.m. each day in order to report to the warehouse, pick up the company van, load materials, and travel

to job sites located throughout Queens, Long Island, New Jersey, and other locations in the New York metropolitan area.

27. Plaintiff frequently worked until late evening and sometimes as late as midnight, depending on job completion requirements. On a regular basis, Plaintiff worked approximately sixty (60) to eighty (80) hours per week, and sometimes more.

28. Plaintiff was paid at his straight-time rate for all hours worked, including hours on Sundays, without any overtime premium.

29. Plaintiff complained to his supervisor, Ricardo Aris, on multiple occasions about the long work hours and Defendants' failure to pay the required overtime premium. Despite these complaints, Defendants did not take any corrective action or address Plaintiff's concerns.

30. Plaintiff received only a thirty (30) minute lunch break during shifts that regularly exceeded ten (10) hours. No breakfast break was provided.

**Defendants' Dual-Payment Scheme**

31. Defendants maintained a deliberate dual-payment system designed to conceal the true number of hours worked by Plaintiff and avoid paying the legally required overtime premium.

32. For the first forty (40) hours of work each week, Plaintiff was paid by direct deposit. The paystubs associated with these direct deposits identified the employer as "Reacthink Corp."

33. For all hours worked in excess of forty (40) per week, Plaintiff was paid by separate check issued by ADH Group. These checks were paid at Plaintiff's straight-time rate of $30.00 per hour (or his then-applicable rate), without any overtime premium whatsoever.

Plaintiff's supervisor, Ricardo Arias, handed Plaintiff these checks every Saturday at the warehouse located at 121-03 18th Avenue, College Point, NY 11356.

34. Upon information and belief, Defendants deliberately structured payments in this manner—using direct deposit through Reacthink Corp for the first forty hours and separate checks for overtime hours Makabad Corp. d/b/a ADH Group—in order to avoid creating payroll records that would reflect overtime hours and the obligation to pay overtime premiums.

35. Defendants utilized a time-tracking application called "ConnectTeam" through which employees, including Plaintiff, would "punch in" and "punch out" via their mobile phones. Upon information and belief, the application was programmed or configured to stop recording hours once a single shift reached twelve (12) hours. After that cap was reached, employees were required to manually record their additional hours on a sheet kept in the company van provided by Defendants, and submit the sheet to their supervisor, Ricardo Arias, at the end of their shift at the warehouse.

36. Upon information and belief, this cap on the time-tracking application was intentionally imposed by Defendants to suppress recorded work hours and facilitate the underpayment of overtime wages.

**Defendants' Interrelated Corporate Structure**

37. Upon information and belief, the Entity Defendants Reacthink, and Makabad share the same principal owners—Abadia, Zuluaga, and Pedraza.

38. Upon information and belief, Defendants use multiple corporate entities to cycle employees through different payroll systems, obscure the identity of the actual employer, evade wage and hour laws, and make it difficult for employees to identify the responsible parties.

39. Plaintiff's paystubs identified Reacthink Corp as his employer, but the workplace, job assignments, and day-to-day supervision were conducted under the ADH Group name. Plaintiff was provided uniforms bearing the ADH Group logo, received work directions from supervisors employed by Makabad Corp. d/b/a ADH Group and reported to the Makabad Corp. d/b/a ADH Group warehouse.

**Uniform Violations**

40. Defendants provided Plaintiff with approximately fifteen (15) polo shirts and hoodies bearing the ADH Group company logo, which Plaintiff was required to wear during work. Defendants did not provide Plaintiff with any uniform maintenance pay or laundry allowance as required by New York law. 12 NYCRR § 142-2.5.

**Wage Notice and Wage Statement Violations**

41. Upon information and belief, Defendants failed to provide Plaintiff with a written wage notice at the time of hiring as required by NYLL § 195(1), including the rate of pay, overtime rate, the regular pay day, the employer's name and any "doing business as" names, the employer's address and phone number, and any allowances or deductions.

42. Defendants failed to provide Plaintiff with accurate wage statements with each payment of wages as required by NYLL § 195(3). The paystubs issued by Reacthink Corp did not accurately reflect the total hours worked by Plaintiff, the overtime hours worked, the overtime rate of pay, or the identity of the actual employer.

**Defendants' Policy Prohibiting Discussion of Wages**

43. Upon information and belief, Defendants maintained a policy prohibiting employees from discussing their wages, pay rates, and compensation with one another. This policy chilled employees from comparing their compensation and discovering wage violations.

## FLSA COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all other similarly situated current and former employees of Defendants.

45. The proposed FLSA collective is defined as:

> All current and former non-exempt employees of Defendants who worked in excess of forty (40) hours in any workweek during the period of three (3) years prior to the filing of this Complaint through the date of final disposition of this action and who were not paid overtime wages at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a workweek (the "FLSA Collective").

46. Upon information and belief, the FLSA Collective consists of numerous individuals. Plaintiff estimates that Defendants employ more than one hundred (100) workers across multiple departments, including refrigeration/HVAC, carpentry, painting, plumbing, roofing, window installation, and boiler work. In Plaintiff's own department (refrigeration/mini-split), there were approximately thirty-two (32) workers organized into six (6) groups.

47. The members of the FLSA Collective are similarly situated to Plaintiff in that they were subjected to Defendants' common policy and practice of paying workers at a flat hourly rate for all hours worked, including overtime hours, using the dual-payment scheme of direct deposit for the first forty hours and separate checks for overtime hours at the straight-time rate.

48. Defendants' failure to pay overtime compensation was the result of a common policy, pattern, or practice, and not the result of isolated or individualized decisions.

## RULE 23 CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action on behalf of himself and all other similarly situated workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL").

50. Workers similarly situated to Plaintiff include all employees of Defendants who worked at one or more of Defendants' job sites, warehouses, offices, or project locations during the relevant statutory period. This complaint refers to Plaintiff and those similarly situated as "Manual Workers."

51. The relevant statutory period is six (6) years preceding the date of the filing of this complaint.

52. Plaintiff also hereby states that the Class Period shall to the extent permitted by law be expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

53. The proposed class is defined as:

> All current and former non-exempt employees of Defendants who were employed at any time during the relevant statutory period through the date of final disposition of this action (the "Class" or "Manual Workers").

54. Numerosity (Rule 23(a)(1)): Upon information and belief, the Class consists of well over forty (40) individuals who are so numerous that joinder of all members is impracticable. Plaintiff estimates there are more than one hundred (100) employees across Defendants' various departments.

55. Commonality (Rule 23(a)(2)): There are questions of law and fact common to the Class, including but not limited to: (a) whether Defendants employed the Class members within

the meaning of the NYLL; (b) whether Defendants paid overtime wages at the rate required by law; (c) whether Defendants maintained a dual-payment system to avoid paying overtime premiums; (d) whether Defendants provided accurate wage notices at the time of hire; (e) whether Defendants provided accurate wage statements with each payment; and (f) whether Defendants paid uniform maintenance allowances.

56. Typicality (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff and the Class members were all subject to the same unlawful policies, practices, and patterns of conduct by Defendants. Plaintiff's claims arise from the same course of conduct and are based on the same legal theories as the claims of the Class.

57. Adequacy (Rule 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the Class. Plaintiff has retained counsel experienced in wage and hour class action litigation.

58. Predominance and Superiority (Rule 23(b)(3)): Questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are small relative to the expense and burden of individual litigation, making it impracticable for members of the Class to individually seek redress.

**FIRST CAUSE OF ACTION**
**Unpaid Overtime Wages – FLSA, 29 U.S.C. § 207**
**(On Behalf of Plaintiff and the FLSA Collective)**

59. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60. At all relevant times, Defendants were "employers" of Plaintiff and the FLSA Collective within the meaning of 29 U.S.C. § 203(d) and Plaintiff and the FLSA Collective were "employees" within the meaning of 29 U.S.C. § 203(e).

61. At all relevant times, Defendants were an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1), and/or Plaintiff and the FLSA Collective were individually engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 207(a)(1). Upon information and belief, Defendants' annual gross volume of sales or business was not less than $500,000.

62. Defendants willfully failed to pay Plaintiff and the FLSA Collective overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per workweek, in violation of 29 U.S.C. § 207.

63. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff and the FLSA Collective to recover for a three-year period.

64. By reason of Defendants' violations, Plaintiff and the FLSA Collective are entitled to recover unpaid overtime wages, an equal amount as liquidated damages, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Unpaid Overtime Wages – NYLL §§ 650 *et seq*. and 12 NYCRR § 142-2.2**
**(On Behalf of Plaintiff and the Class)**

65. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

66. Defendants willfully failed to pay Plaintiff and the Class overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per workweek, in violation of NYLL §§ 650 *et seq*. and 12 NYCRR § 142-2.2.

67. By reason of Defendants' violations, Plaintiff and the Class are entitled to recover unpaid overtime wages, liquidated damages of one hundred percent (100%) of the total amount of wages found to be due pursuant to NYLL § 198(1-a), prejudgment interest, reasonable attorneys' fees, and costs.

**THIRD CAUSE OF ACTION**
**Failure to Provide Wage Notices – NYLL § 195(1)**
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69. Defendants failed to provide Plaintiff and the Class with a written notice at the time of hiring, as required by NYLL § 195(1), containing the rate or rates of pay, including the overtime rate of pay; the basis of pay (hourly, weekly, salary, etc.); any allowances claimed as part of the minimum wage; the regular pay day; the name of the employer and any "doing business as" names; the physical address and telephone number of the employer's main office; and such other information as the Commissioner deems material and necessary.

70. By reason of Defendants' violations, Plaintiff and the Class are entitled to recover statutory damages of fifty dollars ($50.00) per workday for each day that such violation occurred, up to a maximum of five thousand dollars ($5,000.00), per NYLL § 198(1-b), together with reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements – NYLL § 195(3)**
**(On Behalf of Plaintiff and the Class)**

71. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72. Defendants failed to provide Plaintiff and the Class with accurate wage statements with each payment of wages, as required by NYLL § 195(3). Specifically, the wage statements:

(a) did not accurately reflect the total number of hours worked; (b) did not reflect overtime hours worked; (c) did not state the overtime rate of pay; and (d) did not accurately identify the employer.

73. By reason of Defendants' violations, Plaintiff and the Class are entitled to recover statutory damages of two hundred fifty dollars ($250.00) per workday for each day that such violation occurred, up to a maximum of five thousand dollars ($5,000.00), per NYLL § 198(1-d), together with reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
**Failure to Pay Uniform Maintenance – 12 NYCRR § 142-2.5**
**(On Behalf of Plaintiff and the Class)**

74. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

75. Defendants required Plaintiff and, upon information and belief, Class members, to wear uniforms bearing the ADH Group company logo. Defendants provided Plaintiff with approximately fifteen (15) polo shirts and hoodies with the company logo.

76. Defendants failed to pay Plaintiff and the Class the required uniform maintenance pay or laundry allowance as required by 12 NYCRR § 142-2.5.

77. By reason of Defendants' violations, Plaintiff and the Class are entitled to recover the uniform maintenance pay owed, liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the FLSA Collective and the Class, respectfully requests that this Court enter judgment against Defendants as follows:

a. Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b. Authorizing Plaintiff to send notice to all similarly situated individuals pursuant to 29 U.S.C. § 216(b), and certifying the FLSA Collective;

c. Declaring that Defendants' conduct violated the FLSA and the NYLL as alleged herein;

d. Awarding Plaintiff and the FLSA Collective and the Class unpaid overtime wages;

e. Awarding Plaintiff and the Class unpaid uniform maintenance pay;

f. Awarding Plaintiff and the FLSA Collective and the Class liquidated damages;

g. Awarding Plaintiff and the Class statutory damages for wage notice and wage statement violations;

h. Awarding prejudgment and post-judgment interest;

i. Awarding Plaintiff and the FLSA Collective and the Class reasonable attorneys' fees and costs of this action;

j. Awarding such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Jersey City, New Jersey
March 30, 2026

**LAW OFFICE OF MOHAMMED GANGAT**

By: ______________________

Mohammed Gangat, Esq.
220 Ninth Street, Suite 2049
Jersey City, New Jersey 07302
*Attorneys for Plaintiff and all other similarly situated*
(833) 729-3247
mgangat@gangatllc.com